# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**CAEZ-FERMAINT, *et al*.**

Plaintiffs,

v.

**STATE INSURANCE FUND CORPORATION,**          CASE NO. 15-3050 (GAG)

Defendant.

## OPINION AND ORDER

Plaintiff Rosa M. Caez-Fermaint, her spouse Felix Rodríguez, and their conjugal partnership sued Defendant State Insurance Fund Corporation (SIFC) for discrimination, failure to provide reasonable accommodation, and retaliation under the American with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, as amended by the American with Disabilities Amendments Act (ADAA); Puerto Rico Law 44 of July 2, 1985, P.R. LAWS ANN. tit. 1, § 501 *et seq.*; Law 115 of December 20, 1991, P.R. LAWS ANN. tit. 29, § 194, *et seq.*; and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, §§ 5141-42. (Docket No. 1). Pending before the Court is SIFC's motion for summary judgment (Docket No. 33). After considering the parties' submissions and pertinent law, the Court **GRANTS in part and DENIES in part** SIFC's motion for summary judgment at Docket No. 33.

## I.    Local Rule 56

Before addressing the merits of the summary judgment motion, SIFC asks the Court to accept its statement of undisputed material facts as uncontroverted because Caez's opposing statement violates Local Rule 56. (Docket No. 60 at 51).

Local Rule 56(c) instructs that "[a] party opposing a motion for summary judgment shall

submit with its opposition a separate, short, and concise statement of material facts." L.Cv.R. 56(c). This opposing statement "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. Most importantly here, "[u]nless a fact is admitted, the opposing statement *shall support each denial or qualification by a record citation.*" Id. (emphasis added). As Local Rule 56(e) clearly states, the Court can "disregard any statement of fact not supported by a *specific* citation to record material." Id. 56(e).

Local Rule 56 procures "to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Inv. v. González–Toro, 520 F.3d 58, 62 (1st Cir. 2008). "It prevents parties from 'improperly shift[ing] the burden of organizing the evidence presented in a given case to the district court.'" Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 31 (1st Cir. 2010) (citing Mariani–Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007)). Therefore, "the rule is important to the functioning of the district court," and the First Circuit has consistently held that litigants ignore it at their peril. Id.; Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007).

SIFC submitted a statement of 167 uncontested material facts. (Docket No. 33-1). Caez admitted 132 out of 167 of Defendants' uncontested material facts. See Docket No. 52; 60 at 2. She denied or qualified the remaining thirty-five. SIFC asks the Court to deem most of these denied facts as uncontroverted because Caez failed to comply with Rule 56. Some of these facts and denials are irrelevant, and the Court will address only those that are not. Except for those in the following paragraph, which share a common denominator and can be addressed quickly, the Court will address the Local Rule 56 controversies in footnotes as they arise.

Paragraphs 19, 22, 26, 37, 99, 100, 111, 112, 113, 115, 116, 117, 120, 121, 126, and 128

state something along the lines of "[t]he exhibit does not support such allegation." See, e.g., Docket No. 52 ¶113. These paragraphs lack a *specific* citation to the record at the end of each sentence. Thus, SIFC asks the Court to admit these facts as uncontroverted because they are not supported by a specific citation to record material. The Court agrees that these paragraphs do not comply with Local Rule 56. Nevertheless, the Court does not deem it necessary to be so strict. Denials such as "the exhibit does not support such allegation" or "[t]he evidence submitted does not support the conclusion," allow the Court to infer that Caez is alluding to the same citation provided by SIFC in the fact she is contesting. See, e.g., id. Indeed, reviewing the citations reveals as much. Although the Court advises counsel for Caez to comply better with Local Rule 56 in the future, it will admit those denials and treat those facts as disputed.

As said above, the remaining issues will be addressed as they arise. Nevertheless, the Court emphasizes that this case illustrates the importance of Local Rule 56. Had the parties complied with the rule in its entirety, the Court would not have had to invest so much time and resources dissecting the parties' submissions. Moreover, as will be shown below, had Caez properly controverted some of SIFC's material facts, her case may have prospered. Nevertheless, she chose to ignore Local Rule 56 at her peril.

## II.     Relevant Factual Background

Plaintiff Rosa Caez-Fermaint started working at the SIFC as a nurse in 1988. (Docket Nos. 33-1 ¶3; 52 ¶3). Through her tenure, she was promoted from Nurse 1 to Nurse 4. (Docket Nos. 33-1 ¶6; 52 ¶6). Her job functions as Graduate Nurse IV are described in a document that does not indicate that she will be assigned to any specific medical area within the dispensary. (Docket Nos. 33-1 ¶¶8-10; 52 ¶¶8-10).

Caez began suffering panic attacks in 2008. Dr. Sánchez, a psychiatrist, diagnosed her with

generalized anxiety disorder and panic attacks, and prescribed medication and therapy, which improved her condition. (Docket Nos. 33-1 ¶¶43, 47, 50; 52 ¶¶43, 47, 50). Due to her condition, Caez endures fitful sleep, although she can sleep 6-7 hours with her medication—which she feels makes it hard to concentrate (Docket Nos. 33-1 ¶¶73, 81; 52 ¶¶73, 81). Nevertheless, she has no limitations in other daily activities, like eating, driving, or cooking. (Docket Nos. 33-1 ¶69; 52 ¶69). In fact, according to her psychiatrist, her condition does not limit her capacity to perform her functions as a nurse. (Docket Nos. 33-1 ¶61; 52 ¶61).

### A. The Rotation Program

In October 2013, SIFC issued a memorandum explaining the necessity and purpose of establishing a rotation program that alternated nurses between the Emergency Ward and the External Clinic, the two sections of SIFC's dispensary. (Docket Nos. 33-1 ¶32; 52 ¶32). According to SIFC, the rotation program procured that nurses maintain their practice, skills, proficiency, and competence current, as required by local law, Puerto Rico's Department of Health and nurses' Code of Ethics. (Docket Nos. 33-1 ¶¶28, 30; 52 ¶¶28, 30). The authority to enact such program emanated from the Collective Bargaining Agreement with Caez's union, which gives SIFC "all the powers and prerogatives inherent to the faculty of directing and administering its services." (Docket Nos. 33-1 ¶¶29; 52 ¶¶29). Thus, beginning in 2013, nurses began to rotate on a monthly basis between the two areas of the dispensary. (Docket Nos. 33-1 ¶35; 52 ¶35).

### B. Efforts of Reasonable Accommodation

Caez disagreed with the rotation program, and shortly after, during a work incident, suffered a panic attack. (Docket Nos. 33-1 ¶¶83-89; 52 ¶¶83-89). She returned to her psychiatrist, who diagnosed her with a relapse into her generalized anxiety disorder, and recommended keeping her in her current work area to improve her quality of life. (Docket Nos. 33-1 ¶¶92-96; 52 ¶¶92-

96). As a result, SIFC, which had in place a procedure for handling requests for reasonable accommodation, placed Caez in an office where she felt comfortable. (Docket Nos. 33-1 ¶¶98, 101; 52 ¶¶98, 101). On November 23, 2013, Caez filed a formal request for reasonable accommodation in SIFC Office of Equal Employment Opportunity. (Docket Nos. 33-1 ¶102; 52 ¶102). Essentially, she asked to be exempt from rotating. (Docket Nos. 33-1 ¶114; 52 ¶114). After interviewing Caez and evaluating her request, SIFC determined she was not a qualified individual under the ADA and could comply with the rotation, and thus denied her request. (Docket Nos. 33-1 ¶¶103, 122-23; 52 ¶¶103, 122-23). Nevertheless, SIFC allowed her to work in larger offices while rotating to the External Clinic and granted her other accommodations. (Docket Nos. 33-1 ¶¶124-25, 127, 130-31; 52 ¶¶124-25, 127, 130-31).

Caez requested a reconsideration in February 2014. (Docket Nos. 33-1 ¶136; 52 ¶136). She agreed to see Dr. López, another psychiatrist designated by SIFC. (Docket Nos. 33-1 ¶142; 52 ¶142).[1] Dr. López recommended "that she be provided a reasonable accommodation that includes the evasion of working in reduced spaces." (Docket Nos. 54 ¶15; 59 ¶15). based on Dr. López's report, on September 29, 2014, SIFC reaffirmed that she was not qualified under the ADA. (Docket Nos. 33-1 ¶149; 52 ¶149). But, once again, SIFC allowed her to continue working in a larger office when she rotated through the External Clinic. (Docket Nos. 33-1 ¶149; 52 ¶149).

Caez struck back. She filed a charge with the Antidiscrimination Unit on October 2, 2014. A month later, she presented a new certificate from Dr. Sánchez, her own psychiatrist, which recommended that she avoid working in enclosed spaces. (Docket Nos. 33-1 ¶150; 52 ¶150). SIFC

---

[1] Paragraphs 148, 153, 154, 155, and 156, which Caez disputes, relate to statements by Dr. López. Caez denies these facts by stating that these are Dr. López's conclusions. But she does not deny that Dr. López said what the facts say he did. Moreover, Caez fails to provide any citation to the record in support of her denials. Thus, the facts are deemed admitted.

asked Dr. López to re-evaluate Caez, and in late January, 2015, he reiterated that she should be provided a reasonable accommodation. (Docket Nos. 33-1 ¶151; 52 ¶151; 54 ¶16, 59 ¶16). Notably, in April, 2014, a month before Caez was terminated, SIFC's psychiatrist stated that transferring Caez would benefit her health. See Docket No. 34-7 at 161.[2]

### C. Antidiscrimination Claim and Disciplinary Actions

SIFC subjected Caez to three disciplinary actions between January 2014 and May 2015, including her termination in May 2015. (Docket Nos. 33-1 ¶157; 52 ¶157). First, she was reprimanded in January 2014 for an incident that occurred in the preceding November. (Docket Nos. 33-1 ¶159; 52 ¶159).[3] A month later, SIFC admonished her for failing to take patients' vital signs. (Docket Nos. 33-1 ¶160; 52 ¶160).[4] This disciplinary action resulted in a suspension and an independent examiner confirmed the suspension. (Docket Nos. 33-1 ¶¶161-62; 52 ¶¶161-62).[5] Nevertheless, Caez considers this punishment unfair because SIFC failed to provide her the tools to take vital signs. (Docket No. 53 ¶21).[6]

---

[2] Plaintiff's statement of additional facts says, "The intention of destitution of Mrs. Caez comes after SIFC's own medic who treated Mrs. Caez recommended, on April 15, 2015, in a Special Medical Report that a reubication will be beneficial for Mrs. Caez' health." (Docket No. 54 ¶20). Defendant denies this fact, stating that "there is no admissible evidence on the record to support this statement." (Docket No. 59 ¶20). The Court has looked at the evidence and decided to treat the conclusion regarding "[t]he intention of destitution" as disputed, but not the fact that the medic said that a reubication would be beneficial for Caez.

[3] Caez's denial to paragraph 159 cites to plaintiff's deposition, but does not provide a specific citation to the record. Thus, the fact is deemed uncontroverted per Local Rule 56(e). (Docket No. 52 ¶159).

[4] The Court will deem the fact in paragraph 160 as uncontroverted. The fact states that Cáez was suspended for failing to take vital signs. (Docket No. 33-1 ¶160). Caez "denied in part" the stated fact. (Docket No. 52 ¶160). But what exactly she denied is unclear. Caez states that she opposed said sanction and informed her employer that she was not provided with the tools to take vital signs. But as SIFC points out, "the fact that [Caez] opposed the sanction does not dispute the fact that it was imposed, on the contrary, it confirms it." (Docket No. 60 at 49).

[5] Paragraph 162 states that an "independent examiner concluded that the infractions had been committed and confirmed the suspension." (Docket No. 33-1 ¶162). Caez denied this fact stating that this was determined at an informal hearing, not a formal one. (Docket No. 52 ¶162). This may be true, but it is irrelevant. The fact is that the independent examiner reached that conclusion, and Caez has not provided a citation to the record that denies this fact. Actually, Caez has not even provided a citation that establishes it was an informal hearing. Therefore, the Court admits the fact as uncontroverted.

[6] In support of this fact, Caez cites to a note she wrote on the letter notifying her of the disciplinary action, provided in SIFC's exhibits. (Docket No. 46-24 at 2). SIFC denies this fact and argues that the

Finally, it is undisputed that Caez's "continuous conduct violations, insubordination, and refusal to comply with her duties" resulted in the third measure in May 2015—her termination. (Docket Nos. 33-1 ¶163; 52 ¶163).[7] This letter of termination lists a series of incidents that occurred between January and May, 2015, which Caez has not controverted. See Docket Nos. 46-23; 52.

Caez subsequently sued SIFC, and the matter is before the Court today.

In sum, to untangle the web of events, the Court has drafted the following timeline:

- October 2013: SIFC begins rotation program.
- November 2013: Caez requests reasonable accommodation.
- January 2014: SIFC disciplines Caez for the first time.
- February 5, 2014: SIFC denies reasonable accommodation, and Caez asks it to reconsider.
- February 19, 2014: SIFC disciplines Caez for the second time.
- October 2014: Caez files an antidiscrimination claim.
- November 2014: SIFC denies Caez's request for reconsideration.
- April 2014: SIFC psychiatrist recommends Caez's relocation.
- May 2015: Caez is terminated; letter cites incidents from May 2014 until May 2015.

### III.   Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

statement contained in this note is inadmissible evidence, but does not explain why. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Therefore, the Court will admit this fact as uncontroverted.

[7] Similarly, paragraph 163 states that "Plaintiff's continuous conduct violations, insubordination and refusal to comply with her duties resulted in a third disciplinary measure." (Docket No. 33-1 ¶163). Caez denies this fact by stating it "is still debated and the formal hearing is yet to be held." (Docket No. 52 ¶163). But again, Caez provides no citation to support her denial. Thus, the Court shall deem this fact as uncontroverted.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado–Denis v. Castillo–Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

Although the First Circuit "has held repeatedly that the district court in Puerto Rico is justified in holding one party's submitted uncontested facts to be admitted when the other party

fails to file oppositions in compliance with local rules. . . . [t]his, of course, does not mean the unopposed party wins on summary judgment." Fontanez-Nunez v. Janssen Ortho LLC, 447 F.3d 50, 55 (1st Cir. 2006) (citations omitted). Instead, "that party's uncontested facts and other evidentiary facts of record must still show that the party is entitled to summary judgment." Id.

## IV. Discussion

SIFC seeks summary judgment on three grounds: discrimination, reasonable accommodation, and retaliation under the ADA and their state law counterparts. For the reasons discussed below, the Court (1) GRANTS in part and DENIES in part summary judgment on the discrimination causes of action; (2) DENIES summary judgment on the reasonable accommodation cause of action; and (3) GRANTS summary judgment on the retaliation cause of action.

### A. ADA Discrimination

The First Circuit applies the McDonnell Douglas burden-shifting framework in disability discrimination cases. Rios-Jimenez v. Principi, 520 F.3d 31, 40 (1st Cir. 2008) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). This approach requires a plaintiff to prove three factors by a preponderance of the evidence to make a *prima facie* case of discrimination under the ADA: that "(1) [she] was disabled within the meaning of the ADA; (2) [she] was qualified to perform the essential functions of the job, either with or without reasonable accommodation; and (3) the employer took an adverse employment action against [her] because of the alleged disability." Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 32 (1st Cir. 2011) (citations omitted). A plaintiff's failure to meet any of the three *prima facie* elements is dispositive of the entire claim. See Mulloy v. Acushnet Co., 460 F.3d 141, 154 n. 8 (1st Cir. 2006).

If a plaintiff succeeds at making a *prima facie* case, "the burden shifts to the defendant to

1  articulate a legitimate, non-discriminatory reason for the employment decision and to produce

2  credible evidence to show that the reason advanced was the real reason." <u>Rios-Jimenez</u>, 520 F.3d

3  at 41 (citing <u>McDonnell Douglas</u>, 411 U.S. at 802). And if "the defendant is able to offer such a

4  reason, the burden then shifts back to [the plaintiff] to establish that the proffered reason is pretext

5  intended to conceal discriminatory intent." <u>Id.</u>

6    Here, SIFC argues that Caez (1) is not disabled within the meaning of the ADA, (2) was

7  not qualified to perform the essential functions of her job, and (3) that SIFC did not take an adverse

8  action against Caez because of her disability. In the alternative, SIFC argues that its actions were

9  based on legitimate reasons and not pretextual. For the reasons discussed below, the Court holds

10  that there is a genuine issue of material fact on the three elements of a *prima facie* discrimination

11  case. Upon shifting the burden to SIFC, the Court finds that there is an issue of fact as to whether

12  *one* of the adverse actions was based on legitimate reasons or was merely pretextual. Namely,

13  Caez's 2014 suspension. However, the Court finds that there is no issue of fact as to whether there

14  were legitimate reasons for the *other* adverse action—Caez's 2015 termination. For that reason,

15  the Court grants in part and denies in part SIFC's motion for summary judgment.

16    *1. Disability*

17    "The ADA defines 'disability' as either (a) a physical or mental impairment which

18  substantially limits one or more of an individual's major life activities; (b) a record of such

19  impairment; or (c) being regarded as having such an impairment." <u>Calero-Cerezo v. U.S. Dep't of</u>

20  <u>Justice</u>, 355 F.3d 6, 20 (1st Cir. 2004) (citing 42 U.S.C. 12102(2)). Thus, to determine if a person

21  suffers from a disability, the Court must ask three questions. "First, did the plaintiff suffer a

22  physical or mental impairment? Second, did the 'life activity' limited by the impairment qualify

23  as 'major'? Finally, did the impairment, in fact, substantially limit the plaintiff's identified major

24

life activity?" Id.

This analysis must further consider the 2008 amendments broadening the ADA's scope. The amendments state that "[t]he definition of disability in this Act *shall be construed in favor of broad coverage* of individuals under this Act, to the maximum extent permitted by the terms of this Act." ADA Amendments Act of 2008, § 3(4)(A); 42 U.S.C. 121024(a) (emphasis added). Three notable changes in the amendments are:

> (1) the terms "major life activities" and "major bodily functions" are both defined broadly and explicitly; (2) "episodic conditions" and conditions in remission are covered if they would substantially limit a major life activity when active; and (3) impairments are evaluated in their unmitigated state, with the exception of ordinary eyeglasses and contact lenses.

MARK ROTHSTEIN, ET AL., 1 EMPLOYMENT LAW § 3:4 (5th ed. 2016).

### a. Mental Impairment

Caez was diagnosed with generalized anxiety disorder and panic attacks in 2008. (Docket Nos. 33-1 ¶¶46-47; 52 ¶¶46-47). The Code of Federal Regulations define mental impairment as "[a]ny mental or psychological disorder, such as . . . emotional or mental illness." The First Circuit and the Court have recognized depression and bipolar disorder as mental impairments. See Calero-Cerezo, 355 F.3d at 20; Rivera Concepcion v. Puerto Rico, 682 F. Supp. 2d 164, 176 (D.P.R. 2010); but see Carroll v. Xerox Corp., 294 F.3d 231, 238–39 (1st Cir. 2002) (refusing to decide if anxiety disorder is an "impairment"). Generalized anxiety disorder and panic attacks are neighbors in the unfortunate community of mental illnesses. Construing the definition of disability broadly, as the 2008 Amendments Act requires, the Court finds that a reasonable juror might find that generalized anxiety disorder and panic attacks constitute a mental impairment under the ADA.

### b. Major Life Activity

The ADA lists "sleeping" and "concentrating" as major life activities. 42 U.S.C.A. § 12102

(West); see also Criado v. IBM Corp., 145 F.3d 437 (1st Cir. 1998) (evidence of depression and anxiety affected ability to sleep); Calero-Cerezo, 355 F.3d at 21 (citing Whitney v. Greenberg, Rosenblatt, Kull & Bistoli, P.C., 258 F.3d 30, 33 n.4 (1st Cir. 2001)) ("thinking and concentrating"). The undisputed facts shows that Caez suffers from fitful sleep and takes medication that causes her difficulty concentrating. (Docket Nos. 33-1 ¶¶73, 81; 52 ¶¶73, 81). Thus, there is no issue of fact as to whether her impairment affects a major life activity. However, the issue is whether a reasonable juror could find that her impairment "substantially limits" these activities.

    c.   Substantially Limits

Per the regulations, "[t]he term 'substantially limits' *shall be construed broadly* in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' *is not meant to be a demanding standard*." 29 C.F.R. § 1630.2 (emphasis added). "An impairment *need not prevent, or significantly or severely restrict*, the individual from performing a major life activity in order to be considered substantially limiting." Id. (emphasis added). Thus, "[a]n impairment can substantially limit a major life activity, even though the plaintiff is still able to engage in the activity to some extent." Calero-Cerezo, 355 F.3d at 22 (citing Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 22 (1st Cir. 2002)). And as relevant here, "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication." 42 U.S.C.A. § 12102(4)(E)(ii).

Here a reasonable juror could find that Caez's generalized anxiety disorder and panic attacks substantially limits two major life activities: sleeping and concentrating. Although she can sleep six to seven hours with medication, the Court must consider her impairment in its unmitigated

state. Drawing inferences in her favor as the nonmovant, the Court concludes that in its unmitigated state, a juror might find that Caez's impairment substantially limits her ability to sleep. Otherwise she would not need to take medication. Additionally, in its mitigated state, an issue exists as to whether her condition limits her ability to concentrate. To what extent, the Court lacks knowledge. But the undisputed facts assert that she feels that she suffers difficulty concentrating and at this stage it is not the Court's role to weigh the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242–43 (1986) ("the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Henceforth, viewing the evidence in the light most favorable to Caez, the Court holds that a reasonable juror could find that (1) she suffers from an impairment that (2) substantially limits (3) the major life activities of sleeping and concentrating. Thus, there is a genuine issue of fact as to whether Caez is disabled under the ADA.

### 2. *Qualified Individual*

SIFC argues that Caez is not qualified because she is unable to rotate through the Dispensary, and rotation is an essential function of her position. Caez disputes whether rotating is an essential function of her position. Thus, at this stage, the issue of whether Caez is a qualified individual hinges on whether there is a genuine issue of fact as to whether rotating is an essential function.

"To be a 'qualified individual' under the Rehabilitation Act, a plaintiff must show first that she possesses the requisite skill, experience, education and other job-related requirements for the position and, second, that she is able to perform the *essential functions* of the position with or without a reasonable accommodation." Calero-Cerezo, 355 F.3d at 22 (emphasis added). "EEOC interpretive regulations afford guidance in assessing whether a particular job requirement is an

'essential function' for purposes of the ADA." <u>Laurin v. Providence Hosp.</u>, 150 F.3d 52, 56 (1st Cir. 1998). The Regulations state that in general, "essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A job function may be considered essential for several reasons, including the reason the position exists, the limited number of employees available, or the function's highly specialized nature. <u>Id.</u> § 1630.2(n)(2). Evidence of whether a particular function is essential includes:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

<u>Id.</u> § 1630.2(n)(3) Although the First Circuit "give[s] substantial weight to the employer's view of job requirements," it has emphasized that this "is only one factor in the analysis," which it labeled as "fact-intensive." <u>Ward</u>, 209 F.3d at 34 (citing <u>Laurin</u>, 150 F.3d at 57-61).

It is undisputed that the amount of time performing the rotating function is "monthly," and the potential consequences of not rotating include lack of proficiency in every area of the Medical Dispensary. (<u>See</u> Docket Nos. 33-1; 31; 35). Moreover, SIFC proffers evidence that rotating is essential in the form of the employer's judgment. (Docket No. 33-1 ¶34).[8]

But other issues are disputed. SIFC argues that the job description proves that rotating is

---

[8] Because this fact is not dispositive, the Court will not consider if the evidence is admissible.

an essential function because it "does not indicate that [Caez] will be assigned to any specific medical area." (Docket No. 33-1 ¶10; 52 ¶10).[9] Viewing this in the light most favorable to the non-movant, the Court disagrees. Failure to state that Caez will be assigned to a specific area does not necessarily imply that she will be rotated. Caez argues the exact opposite—the job description does not state that she will *not* be assigned to a specific area. (Docket No. 51 at 17). Moreover, SIFC argues that the collective bargaining agreement establishes that rotating is an essential function. But the fact it cites in support merely states that the agreement establishes "the Fund has all the powers and prerogatives inherent to the faculty of directing and administering its services." (Docket Nos. 33-1 ¶30; 52 ¶30). Here again, viewing this fact in the light most favorable to the non-movant, the Court finds that a jury could interpret this fact as the opposite—that the agreement's silence on the issue of rotation means it is not an essential function.

Finally, SIFC argues that the work experience of past holders of the position or of the incumbents in similar positions also illustrate that rotating is an essential function. For support, SIFC cites to evidence that nurses have rotated since 2013. (Docket Nos. 33-1 ¶35; 52 ¶35). But Caez argues otherwise, and indeed, evidence exists to support the contrary conclusion. Caez began working as a nurse in 1988. (Docket Nos. 33-1 ¶3; 52 ¶3). She did not rotate for 25 years. She witnessed the fall of the Berlin Wall, the attack on the Twin Towers, and the election of the first African-American president without performing the "essential" function of rotating through the dispensary. In sum, there is a genuine issue for trial as to whether rotating is an essential function

---

[9] SIFC asks the Court to admit paragraphs 11, 34, and 37 as uncontroverted because Caez failed to properly dispute them. The three paragraphs basically state that participation in SIFC's rotation program is an essential function of Caez's nursing job. Caez argues that this is "conclusory" and inadmissible evidence. Additionally, she cites to SIFC's Exhibit 3 to dispute the fact. See Docket 46-1. Indeed, Exhibit 3 does not state that rotation is essential. SIFC invites the Court to view this as an omission that does not contradict the asserted fact, but at this stage the Court must view the evidence in the light most favorable to the non-moving party. Thus, the Court finds that Caez's denial and citation to Exhibit 3 suffices to dispute the facts stated in those three paragraphs. Since it does not alter the outcome of the motion, the Court deems it unnecessary to consider the evidentiary objection and whether the statements are inadmissible as conclusory.

of Caez's job.

### 3. *Causation*

To satisfy the third element, a plaintiff must show that an adverse employment action occurred, and that a causal connection exists between the adverse employment action and the disability. See Katz v. City Metal Co., 87 F.3d 26, 33 (1st Cir. 1996). For an action to be adverse, it "must materially change the conditions of plaintiff['s] employment." Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002); Castro-Medina v. Procter & Gamble Commercial Co., 565 F. Supp. 2d 343, 371 (D.P.R. 2008). Whether a change is adverse is based on an objective standard. Marrero v. Goya of P.R., 304 F.3d 7, 23 (1st Cir. 2002). "Material changes include 'demotions, *disadvantageous transfers or assignments*, refusals to promote, *unwarranted negative job evaluations*, and toleration of harassment by other employees.'" Gu, 312 F.3d at 14 (quoting Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)) (emphasis added). A plaintiff can establish causation by proving that "his disability was *a* motivating factor" in the employer's decision to take the alleged adverse employment action. Katz, 87 F.3d at 33 (emphasis added). "Timing may bear on the question of causation in a retaliation claim, but we [the First Circuit] have also warned that a 'narrow focus [on timing may] ignore[ ] the larger sequence of events and also the larger truth.'" Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 100-01 (1st Cir. 2007) (citing Soileau v. Guilford of Me. Inc., 105 F.3d 12, 16 (1st Cir. 1997)).

The Court finds that there are genuine issues of material fact regarding adverse action because of Caez's disability. Here there are three possible adverse actions: (1) the rotation program, (2) Caez's suspension in 2014 for failing to take vital signs and (3) Caez's termination in 2015. Because SIFC has proffered a legitimate business reason for the rotation program, the Court will not determine if it is a reassignment for purposes of adverse action under the ADA. As

to the 2014 suspension, Caez considers it was due to an unwarranted negative job evaluation because SIFC did not provide her the tools to take vital signs. This evaluation occurred two weeks after she requested reasonable accommodation. Thus, given the timing, a reasonable juror could infer that the adverse action was taken because of her disability. Similarly, SIFC terminated Caez on May 22, 2015. (See Docket No. 46-23). This is the epitome of an adverse employment action, and it occurred a month after Dr. López, SIFC's own psychiatrist, stated that a relocation would benefit Caez. (See Docket No. 34-7 at 161). This fact alone would allow a reasonable juror to infer that SIFC terminated Caez because of her disability and the pressure to accommodate her.

The Court finds that Caez has proffered sufficient evidence to establish a *prima facie* case of disability discrimination and shift the burden against SIFC to show there are no genuine issues of facts regarding the legitimate reasons for its actions.

### 4. *McDonnell Douglas Burden-Shifting*

Having succeeded at making a *prima facie* case of discrimination, the burden shifts to SIFC "to articulate a legitimate, non-discriminatory reason for the employment decision and to produce credible evidence to show that the reason advanced was the real reason." Rios-Jimenez, 520 F.3d at 41 (citing McDonnell Douglas, 411 U.S. at 802). If SIFC "is able to offer such a reason, the burden then shifts back to [Caez] to establish that the proffered reason is pretext intended to conceal discriminatory intent." Id. "An employee can establish pretext 'by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions *in the employer's proffered legitimate reasons* such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons.'" Carreras, 596 F.3d at 37 (emphasis in original) (citing Santiago-Ramos, 217 F.3d at 56).

a. Legitimate Business Reasons

SIFC has met its burden of providing a legitimate reason for the rotation program, the temporary suspension, and the intention of termination from May 2015. The undisputed facts establish that SIFC established the rotational program "to ensure that the Nurses at SIFC maintain their practice, skills, proficiency and competence current." (Docket Nos. 33-1 ¶30; 52 ¶30). The rotation program ensures that nurses are proficient in every area, prepared for contingencies and can guarantee the Medical Dispensary's operation and quality of services. (Docket Nos. 33-1 ¶31; 52 ¶31). SIFC issued the norm "to assign work equitably and the program applies to all the nurses." (Docket Nos. 33-1 ¶33, 36; 52 ¶33, 36). Hence, the Court finds that there is no genuine issue of fact as to the legitimate reasons for the rotation program. As to the suspension, SIFC has offered a legitimate business reason to suspend her—she failed to take patients' vital signs. Likewise, there is no dispute as to the May 2015 termination letter, which includes a long list of disciplinary actions leading to SIFC's decision to terminate. <u>See</u> Docket Nos. 33-1 ¶163; 52 ¶163; 60 at 50). Thus, the Court finds that there is no genuine issue of fact as to the legitimate reasons provided therein supporting Caez's termination.

b. Pretext

Because SIFC offered legitimate business reasons for its alleged discriminatory acts, the burden shifts to Caez to prove that these reasons are mere pretext. The Court finds that Caez has only proven a genuine issue of fact regarding pretext on one of three actions: the temporary suspension. She has not argued that the reasons for the rotation program were pretext for discriminating against her because of her disability. Likewise, she has not argued that the reasons contained in the letter of termination were pretext for discrimination. Therefore, the Court must conclude that Caez has not met her burden of proof under the <u>McDonnell Douglas</u> test as to those

two instances of alleged discrimination. Nevertheless, Caez has disputed the reasons for her 2014 suspension in ways that are indicative of pretext. Her handwritten note protesting the suspension points to "inconsistencies, incoherencies, or contradictions" in SIFC's account concerning her failure to take vital signs. Carreras, 596 F.3d at 37 (citing Santiago-Ramos, 217 F.3d at 56). Namely, that SIFC could not expect her to take vital signs if it failed to provide her the tools for doing so. Thus, as to this adverse employment action, the Court finds a genuine issue of material fact that would entitle Caez to relief if a jury found her in favor.

For the reasons discussed above, the Court **GRANTS in part and DENIES in part** SIFC's motion for summary judgment on the ADA discrimination claim. Although Caez has not met her burden of proof regarding pretext on the issue of the rotation program and her termination, she has proven an issue of material fact regarding the 2014 suspension.

B. ADA: Reasonable Accommodation

An employer may also violate the ADA if it knows of an employee's disability, yet fails to make reasonable accommodations for said employee. Estades Negroni v. Associates Corp. Of North America, 377 F.3d 58, 63 (1st Cir. 2004). To survive summary judgment on her reasonable accommodation claim, a plaintiff must "produce enough evidence for a reasonable jury to find that: (1) [s]he is disabled within the meaning of the ADA; (2) [s]he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) that [defendant], despite knowing of [her] disability, did not reasonably accommodate it." Rocafort v. IBM Corp., 334 F.3d 115, 119 (1st Cir. 2003). Thus, a *prima facie* case for reasonable accommodation shares the first two elements as a *prima facie* case for discrimination, which Caez has already established, as discussed above. Therefore, to survive summary judgment on her reasonable accommodation claim, Caez must prove that an issue of fact exists as to whether SIFC

failed to reasonably accommodate her.

"What constitutes a reasonable accommodation is a fact-driven analysis made on a case-by-case basis." <u>Blasco Figueroa v. Puerto Rico Aqueducts and Sewer Authority</u>, No. 14-1395, 2016 WL 1122003, at *5 (D.P.R. March 22, 2016) (citing <u>García-Ayala v. Lederle Parenterals, Inc.</u>, 212 F.3d 638, 647 (1st Cir. 2000) (courts must "giv[e] the type of individual assessment of the facts that the Act and the case law requires.")). The analysis may include making the workplace accessible and usable to disabled employees, modifying work schedules, re-assigning to a vacant position, or providing additional unpaid leave for necessary treatment. <u>See</u> 42 U.S.C. § 12111(9).

A plaintiff must make a specific request for accommodation, and prove that a proposed accommodation "would enable her to perform the essential functions of her job" and would be "feasible for the employer under the circumstances." <u>Reed v. LePage Bakeries, Inc.</u>, 244 F.3d 254, 259 (1st Cir. 2001). Once a plaintiff makes a specific request, the defendant has the opportunity to show that the proposed accommodation would impose an undue hardship." <u>Reed</u>, 244 F.3d at 259. Generally, undue hardship "means an action requiring significant difficulty or expense." 42 U.S.C.A. § 12111(10)(A). The factors to consider include: nature and cost, financial resources, and "the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity." <u>Id.</u> § 12111(10)(B). Thus, "[a]n adequately supported denial of an accommodation request requires the employer 'to produce at least some modicum of evidence showing that the [requested accommodation] would be a hardship, financial or otherwise.'" <u>Calero-Cerezo</u>, 355 F.3d at 23 (citing <u>Ward</u>, 209 F.3d at 37).

Additionally, the regulations state, and the First Circuit has held, that "a request for a reasonable accommodation may trigger a responsibility on the part of the employer to enter into an interactive process with the employee to determine an appropriate accommodation." <u>Calero-</u>

Cerezo, 355 F.3d at 23 (citing 29 C.F.R. § 1630.2(o)(3)). This "requires a great deal of communication," and an employer's refusal to participate "may itself constitute evidence of a violation of the statute." Id. (citing García–Ayala, 212 F.3d at 648 n.12; Jacques v. Clean–Up Group, Inc., 96 F.3d 506, 515 (1st Cir. 1996)).

The Court finds that a genuine issue of fact exists as to whether SIFC failed to reasonably accommodate Caez. Caez submitted a request for reasonable accommodation to SIFC's office of equal employment opportunity, seeking to be exempted from working in the External Clinic, and therefore, rotating. (Docket Nos. 33-1 ¶¶102, 114; 52 ¶¶102, 114). She informed her supervisor and was placed in an office where she would feel comfortable while SIFC evaluated her request. (Docket Nos. 33-1 ¶101; 52 ¶101). SIFC denied her request, but nevertheless (1) allowed her to work in larger offices when rotating in the External Clinic, (2) instructed that crying patients be assigned to other nurses to avoid triggering a panic attack, and (3) allowed her to take breaks as necessary. (Docket Nos. 33-1 ¶¶130-31; 52 ¶¶130-31). Caez sought reconsideration, but was denied. Whether SIFC's voluntary accommodations amounted to reasonable accommodation is a question for the jury, not the judge, to decide.

Moreover, a reasonable juror could find that a request to be exempted from rotating was reasonable, feasible, and would not cause undue burden. Since nurses did not rotate until November 2013, a juror could conclude that it was feasible to operate the facility without one of the nurses rotating. Moreover, SIFC has proffered no evidence of undue hardship. Granted, the rationale behind the decision to rotate is undisputed—to improve nurses' proficiency. But drawing all reasonable inferences in the non-moving party's favor, this fact does not allow the Court to infer that exempting Caez from rotating, thus reducing her proficiency, would constitute an "undue hardship." Moreover, a jury should decide whether "the type of operation or operations of the

covered entity, including the composition, structure, and functions of the workforce of such entity"
is such that exempting Caez from rotating would be an "undue hardship." Therefore, SIFC's
motion for summary judgment as to the reasonable accommodation claim is **DENIED.**

C. ADA-Retaliation

The ADA prohibits retaliation for engaging in protected activity, such as requesting
reasonable accommodation or filing an anti-discrimination complaint before the EEOC. See 42
U.S.C. § 12203(a); Freadman, 484 F.3d at 106. An unsuccessful disability claim does not defeat a
retaliation claim; instead, "[a]n ADA plaintiff may assert a claim for retaliation even if she fails to
succeed on a disability claim." Freadman, 484 F.3d at 106 (citing Soileau, 105 F.3d at 12). "To
establish a claim of retaliation, a plaintiff must show that (1) she engaged in protected conduct, (2)
she suffered an adverse employment action, and (3) there was a causal connection between the
protected conduct and the adverse employment action." Id. (citing Wright, 352 F.3d at 478).

In cases where the third element relies on temporal proximity, the Supreme Court "has
stated . . . that the temporal proximity must be 'very close.'" Calero-Cerezo, 355 F.3d (finding that
a month is close enough) (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273–74
(2001)); see also Ramirez Rodriguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67, 84-86
(1st Cir. 2005) (two months was too remote). Moreover, "[e]vidence that an employer willingly
granted an employee's request for an accommodation, though by no means dispositive of the
matter, tends to militate against making an inference of retaliation in a case like this one. Soileau,
105 F.3d at 17.

If the plaintiff makes a *prima facie* showing of retaliation, the Court employs the
McDonnell Douglas burden-shifting approach discussed above. Under this approach, the
"defendant must articulate a legitimate, non-retaliatory reason for its employment decision."

Calero-Cerezo, 355 F.3d at 26. If the defendant satisfies its burden, then "the plaintiff must show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Calero-Cerezo, 355 F.3d at 26 ("The troubling history of plaintiff's insubordinate and disruptive behavior and the occasions when she failed to perform her duties in a satisfactory manner all provided legitimate justification for disciplinary action entirely untainted by retaliatory animus").

The parties do not dispute that Caez engaged in protected activity when she filed an antidiscrimination claim in October 2014 and suffered an adverse action when her employment was terminated in May 2015. Nor do they dispute that a retaliation claim for events predating October 2014 are time-barred. (Docket No. 60 at 24). The issue is whether Caez meets the causal connection requirement for a *prima facie* case of retaliation, and if so, survives the burden-shifting test in connection to her October 2014 claim and May 2015 adverse action.

a. Causal Connection

Viewing the undisputed facts in the light most favorable to Caez, the Court finds that there is an issue of fact regarding a causal connection between Caez's protected activity and SIFC's adverse employment action. SIFC argues that there is not sufficient temporal proximity between Caez's EEOC complaint in October 2014 and her termination in May 2015. Although the Court agrees that seven months is too long to prove a causal connection, the Court finds some pitfalls in SIFC's argument. First, the termination letter lists a series of conduct violations that began to accrue in November 2014—right after the complaint was filed. A reasonable juror could find that there was temporal proximity between the protected activity and the series of events leading to the adverse employment action. Simply put, a juror might infer that SIFC started preparing a case for Caez's dismissal a month after she filed her antidiscrimination claim. Second, Caez was terminated

a month after SIFC's physician recommended that she work in open spaces. "It is well established that 'requesting an accommodation, without filing a formal charge or engaging in other specific behaviors listed in § 12203(a), is nonetheless behavior protected from an employer's retaliation.'" <u>Carreras</u>, 596 F.3d at 35-36 (citing <u>Ward</u>, 352 F.3d at 477-78). Here, there is clear temporal proximity between that protected conduct (requesting accommodation) and the adverse action. Since "the *prima facie* burden in this context is not an onerous one," the Court finds that a reasonable juror could find a causal connection between the protected activity and the adverse action given the preceding two reasons. <u>Calero-Cerezo</u>, 355 F.3d at 26.

>   b.  McDonnell Douglas Burden-Shifting

Ultimately, it does not matter if Caez can set forth a *prima facie* case of retaliation. Under the burden-shifting approach, SIFC has proffered a legitimate reason for its decision to terminate Caez, such as insubordination, as discussed above in the context of discrimination. And likewise, Caez has offered no evidence that the reasons for her termination were pretextual. Had she offered any evidence indicative of pretext, the outcome of this case would be different. <u>See</u> <u>Wright</u>, 352 F.3d at 478 (finding that plaintiff's contention "that, as opposed to exhibiting insubordination, his behavior . . . consisted of good-faith, successful efforts to obtain materials from a meeting that he had already missed while caring for his son" allowed a reasonable juror to infer that the defendant's "charge of insubordination masked retaliatory motives"). Additionally, the Court notes that SIFC accommodated Caez throughout much of 2014, despite finding it lacked a legal obligation to do so, which militates against inferring retaliation. <u>See</u> <u>Soileau</u>, 105 F.3d at 17. Therefore, because Caez has not offered evidence, or even argued, that the reasons for her termination were pretextual, the Court **GRANTS** SIFC's motion for summary judgment as to the retaliation claim.

D. State Law Claims

*1. Law 44*

Law 44 "is Puerto Rico's counterpart to the ADA." <u>Salgado–Candelario v. Ericsson Caribbean, Inc.</u>, 614 F.Supp. 2d 151, 175 (D.P.R. 2008); <u>Vazquez v. Municipality of Juncos</u>, 756 F. Supp. 2d 154, 166 (D.P.R. 2010). It prohibits discrimination against "persons with any kind of physical, mental or sensory disability" by any public or private institution in Puerto Rico, P.R. LAWS ANN., tit. 1, § 504, and "was intended to harmonize Puerto Rico law with the federal statutory provisions of the ADA." <u>Torres–Alman v. Verizon Wireless Puerto Rico, Inc.</u>, 522 F. Supp. 2d 367, 401 (D.P.R. 2007). The elements of proof for a claim under Law 44 are essentially the same as those for establishing a claim under the ADA, <u>Salgado–Candelario</u>, 614 F. Supp. 2d at 175.

Because the elements are identical to the ADA's discussed above, the Court **GRANTS in part and DENIES in part** summary judgment as to Law 44 claims pertaining to discrimination, and **DENIES** summary judgment as to those Law 44 claims related to reasonable accommodation.

*2. Law 115*

Plaintiff also asserts a claim under Puerto Rico's retaliation statute, Law 115. Like the ADA, Law 115 protects employees who provide or attempt to provide testimony or information in an administrative, judicial or legislative forum. P.R. LAWS ANN. tit. 29, § 194a(a). Claims under Law 115 are regularly analyzed in a similar fashion to ADA retaliation claims. See <u>Quevedo–Gaitan v. Sears Roebuck de Puerto Rico, Inc.</u>, 536 F. Supp. 2d 158, 171 (D.P.R. 2008) (analyzing Law 115 conterminously with ADA retaliation claims); <u>Rivera v. Empresas Y-Nuina, Inc. / Kikuet</u>, 2011 WL 3443086 at *5 (D.P.R. Aug. 8, 2011) (denying summary judgment based on court's assessment of ADA retaliation claim). Accordingly, based on its analysis of Caez's ADA

retaliation claim, the Court **GRANTS** Defendant's motion for summary judgment as to Caez's Law 115 claim.

       *3. Article 1802 and 1803*

       Caez concedes that she has no resort under Articles 1802 and 1803 because the remedies in Laws 44 and 115 prevail, but asks the Court to deny summary judgment as to the derivative action for her husband. (Docket No. 51 at 24-25). SIFC did not address this matter in its reply brief. See Docket No. 58. Therefore, the Court hereby **DISMISSES** with prejudice Caez's Article 1802 and 1803 claims, and **DENIES** summary judgment as to Caez's husband's claims.

E. **Conclusion**

       For the reasons discussed above, the Court **GRANTS** in part and **DENIES** in part summary judgment. The Court dismisses with prejudice (1) Caez's discrimination claims related to the rotation program and her termination, (2) Caez's retaliation claims, and (3) their state law counterparts, are dismissed with prejudice. The remaining matters, namely, (1) Caez's discrimination claim related to her 2014 suspension, (2) Caez's reasonable accommodation claim, and (3) their state law counterparts, shall move forward.

       **SO ORDERED.**

       In San Juan, Puerto Rico this 18th day of December, 2017.

                         *s/ Gustavo A. Gelpí*
                        GUSTAVO A. GELPI
                      United States District Judge